531 P.2d 222

**Willie G. GRAHAM and Sandra J. Graham, Plaintiffs-Appellants,**

v.

**ALBUQUERQUE NATIONAL BANK, a New Mexico Banking Corporation, C. R. Pitchford, Jean Pitchford, Bennye Brown, Brad Huckabee and Jerre Huckabee, Defendants-Appellees.**

No. 1451.

Court of Appeals of New Mexico.

Nov. 20, 1974.

Rehearing Denied Dec. 4, 1974.

Certiorari Granted Jan. 24, 1975.

Daniel E. Duncan, Albuquerque, for plaintiffs-appellants.

Paul G. Bardacke, Jay D. Hertz, Thomas L. Popejoy, Jr., Sutin, Thayer & Browne, Albuquerque, for defendants-appellees.

## OPINION

LOPEZ, Judge.

Plaintiffs (the Grahams) brought suit against five owners of record of a certain lot and house located in Bernalillo County, as vendors, and the bank, as escrow agent, for damages on a real estate contract resulting from the vendors' allegedly unlawful action in default against the Grahams under said contract. The court below dismissed the complaint as against the bank and as against defendants Brad and Jerre Huckabee by two separate orders. From summary judgment given in favor of the remaining defendants, plaintiffs appeal; we reverse.

The record discloses a form real estate contract entered into by C. R. Pitchford, Jean Pitchford, Brad Huckabee and Jerre Huckabee, as vendors, and the Grahams as purchasers, dated December 24, 1964. The record further discloses that the Huckabees assigned their interest in the property to the Pitchfords by deed during September, 1965, in consideration of a cash payment of $2,000. In March of 1967, C. R. and Jean Pitchford assigned all their interest in the property to one Bennye Brown, by deed and in consideration of payment in the amount of $1,000. After March 3, 1967, the sole owner of the property in question was Bennye Brown. Later, during the autumn of 1967, C. R. and Jean Pitchford were divorced; and Mr. Pitchford subsequently married Bennye Brown.

During the summer of 1971, the Grahams were contacted by a cash buyer interested in the property to see if they would sell. They considered the buyer's offer reasonable and told him to take steps necessary to set up the transaction. This prospective buyer soon after advised the Grahams that his search of the title indicated many liens which rendered it unmarketable. The Grahams, by counsel, contacted Pitchford to inquire about the cloud on their title. What agreement was reached between Mr. Pitchford and the Grahams' attorney is in dispute; but in August, 1971, the Grahams stopped sending their installments to the escrow bank and deposited them to their own savings account instead. The record before us indicates that when they stopped sending their regular payments to the bank, the Grahams thought they were doing so in order to require Pitchford to provide title insurance on the subject property.

Throughout this period Mr. Pitchford had been having difficulties in his business affairs. By letter dated March 24, 1972, several months after the Grahams had stopped sending their payments, Pitchford, by his attorney, sent a form notice of default and demand to the Grahams at the address listed by them when they signed the contract in 1964. Whether Pitchford knew the Grahams had removed from that address in Albuquerque to Farmington is disputed. In any event, Pitchford's lawyer discovered the Grahams' correct address in the escrow file at the bank and sent them a copy of the March 24 letter which they received. They forwarded the letter to their own lawyer and responded to Pitchford's lawyer by advising him to contact their attorney.

■ Our consideration of this appeal has been complicated by its form. We begin our discussion, therefore, by indicating that we believe the order filed January 16, 1973, which explicitly determines "all remaining aspects," was a final order and appealable under Rule 54(b), prior to its amendment in April, 1973. "When more than one claim for relief is presented in an

action * * *, or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. * * * " Section 21-1-1(54)(b), N.M.S.A.1953 (Repl.Vol. 4). The Huckabees, having conveyed all of their right, title and interest in the real estate contracts, prior to this suit had no interest in this controversy. Therefore, the trial court's order of February 2, 1973 dismissing them from this suit was a pro forma matter. In our opinion, to hold otherwise would be to exalt form over substance, and this we are unwilling to do.

Our task, then, on appeal is to determine whether the notice of default and foreclosure sent by Pitchford's attorney constituted legal notice. The Supreme Court of the State of Washington has refused to cancel a contract in a similar situation where the vendor brought an action to enforce a forfeiture of a contract to convey land because of the purchaser's failure to make payment in time. There, as in the case at bar, the vendor had made time of the essence, and it appeared that prior to the alleged default the vendor had assigned the contract to B. B had not at the time of suit been shown to have consented to the default procedure, so the court refused to allow the vendor to rescind the contract absent B's consent. Shaw v. Benesh, 37 Wash. 457, 79 P. 1007 (1905); accord Kendrick v. Davis, 75 Wash.2d 456, 452 P. 2d 222 (1969).

In 17A C.J.S. Contracts § 414 (1963) the rule is stated: "A contract may be rescinded only by a party to the contract in whom the right exists or his legal representative." Further, 91 C.J.S. Vendor and Purchaser § 127 (1955) states: "The vendor cannot rescind if he has disposed of his entire interest in the contract, in which case the right to do so passes to his assignee."

In this case, by the time the demand letter was sent, all the original vendors had disposed of their respective interests to Bennye Brown. The record does not show that the attorney who signed the letter was acting as an agent for Bennye. The only person who could have lawfully sent the letter was Bennye or her agent. Therefore, even though the plaintiffs received a letter of default and did not comply with its terms, there is a material question of fact as to whether C. R. Pitchford was entitled to send the demand letter.

▪ The real estate contract in question is not ambiguous and is without conflicting paragraphs. Its terms are easily read and understood. Paragraph eight of the contract gives the *owner* the right to declare the unpaid amount to be due or to terminate the contract. This, C. R. Pitchford could not do. When C. R. and Jean Pitchford delivered their quitclaim deed to Bennye Brown, they extinguished any right they could previously have exercised as "owner." Davies v. Boyd, 73 N.M. 85, 385 P.2d 950 (1963). An assignment extinguishes the assignor's rights. 4 Corbin, Contracts § 891 (1951).

▪ We, therefore, conclude that there is a genuine issue of material fact as to whether the procedure attempted in forfeiture and default was sufficient to comply with the default provisions of the contract. It was error for the trial court to enter summary judgment for the defendants. Goodman v. Brock, 83 N.M. 789, 498 P.2d 676 (1972).

We do not treat other issues raised by plaintiffs on appeal since they involve matters to be decided at trial. The judgment of the lower court is reversed and that court is instructed to reinstate this case on its docket.

It is so ordered.

HERNANDEZ, J., concurs.

HENDLEY, J., dissenting.

HENDLEY, Judge (dissenting).

On this appeal from the granting of a motion for partial summary judgment, not only does the majority opinion decide the

legal significance of facts, but it also finds those facts upon which to attach legal significance. Yet, it sends the cause back for trial, presumably to try an issue already determined by the majority. My dissent, however, is not solely for the above reasons.

We have no jurisdiction to entertain the appeal. Pitchfords' motion for summary judgment was granted January 16, 1973. That order does not contain "an express determination that there is no just reason for delay." Section 21–1–1(54)(b), N.M.S.A.1953 (Repl. Vol. 4, 1970), (Amended April 20, 1973 see Poc.Supp.1973); Aetna Casualty and Surety Co. v. Miles, 80 N.M. 237, 453 P.2d 757 (1969).

Accordingly, plaintiffs' notice of appeal, filed January 29, 1973, was to a non-appealable order. The order terminating all issues as to all parties in the action was filed February 2, 1973. No appeal was taken from that order, which was the only final judgment.

We are without jurisdiction.

The appeal should be dismissed.

I dissent.